IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

    Defendant.

No. C 14-03989 WHA

**ORDER ENTERING CONSENT DECREE AND VACATING HEARING**

## INTRODUCTION

In this civil environmental action, there is an unopposed motion to enter a consent decree. No comments or objections were received. For the reasons stated herein, the motion is **GRANTED**. The November 20 hearing is hereby **VACATED**.

## STATEMENT

Plaintiff is the United States. Defendant is Costco Wholesale Corporation, a membership warehouse business. Costco allegedly owned and operated commercial refrigeration appliances that used a refrigerant listed as a "class I" or "class II" substance under Section 602 of the Clean Air Act, 42 U.S.C. 7671a. Class I and class II substances were known or suspected to cause or significantly contribute to harmful effects on the stratospheric ozone layer.

In November 2007, the Environmental Protection Agency ("EPA") requested information from Costco regarding repairs of leaks from commercial refrigeration appliances using a class I or class II refrigerant.

In January 2013 and June 2014, Costco retrofitted appliances at 32 warehouses (Dkt. No. 13-1 at 1, 5).

In September 2014, this civil action was commenced, seeking civil penalties and injunctive relief regarding commercial refrigerant repair and record-keeping. The United States simultaneously lodged a proposed consent decree. Notice of that proposal was published in the Federal Register. No comments were received (Riedel Decl. ¶ 7).

In October 2014, an unopposed motion to enter the consent decree was filed (Dkt. No. 13-1). All objections and motions were due by October 30. No objections or motions were filed. Accordingly, this order rules as follows.

## ANALYSIS

A district court reviews a proposed consent decree to determine whether it is fundamentally fair, adequate, and reasonable. *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).

### 1. PROCEDURAL FAIRNESS.

The proposed consent decree is the product of "over five years" of "arm's-length" negotiation by experienced counsel (Riedel Decl. ¶ 3). The EPA collected from Costco information regarding warehouses in California, Arizona, Nevada, and Hawaii, including 25,000 pages of equipment records. When negotiating, counsel considered the EPA's analysis, Costco's compliance efforts, and the risks of litigation (Riedel Decl. ¶¶ 3, 6; Compl. ¶¶ 24–26). After a proposal was reached, notice was provided in the Federal Register for thirty days. No comments were received (Ridel Decl. ¶ 7). No objections to or motions regarding the instant motion to enter the proposed consent decree were filed. There is no evidence in the record of bad faith or collusion. Accordingly, this order finds that the proposed consent decree is procedurally fair.

### 2. SUBSTANTIVE FAIRNESS.

The complaint alleged the following claims for relief against Costco: failure to repair leaking appliances; failure to prepare and implement retrofit or retirement plans; and failure to maintain adequate servicing records under Section 82.156(i) and Section 82.166(k) and (m) of Title 40 of the Code of Federal Regulations.

2

Section 82.156(i) requires that owners and operators of commercial refrigeration equipment containing more than fifty pounds of refrigerant, either repair leaks to bring the annual leak rate to below 35 percent or prepare a one-year retrofit or retirement plan for the leaking appliance.

Section 113(b) of the Act, 42 U.S.C. 7413(b), authorizes civil penalties. The United States may seek civil penalties up to $32,500 per day for each violation occurring on or after March 16, 2004, and civil penalties up to $37,500 per day for each violation occurring on or after January 13, 2009, pursuant to the EPA's civil monetary penalty inflation adjustment rates.

The key terms of the proposed consent decree are as follows:

1. Costco would pay a $335,000 civil penalty.

2. Costco would implement the "Refrigerant Compliance Management Plan" found at Appendix B. The plan would establish policies and procedures regarding use and maintenance of appliances at approximately 278 Costco warehouses in the United States. In pertinent part:

> All regulated commercial refrigeration systems exhibiting an annual leak rate in excess of 35% and all regulated comfort cooling appliances exhibiting an annual leak rate in excess of 15% shall be repaired within 30 days of leak detection as required by EPA regulations. Repairs will be performed by certified technicians. A leak is considered to be repaired if the leak rate is reduced below the 35% threshold. Leak repairs must follow all EPA-approved procedures, including refrigerant evacuation and recovery/recycling, and verification.
>
> If a commercial refrigeration appliance with an annual leak rate in excess of 35% or a comfort cooling appliance with an annual leak rate in excess of 15% cannot be repaired within 30 days of leak detection, then the Warehouse Refrigerant Representative and [Refrigerant Compliance Supervisors] – Purchasing will determine appropriate actions.

Costco would monitor and retain records regarding regulated refrigerant use for "at least 3 years" after termination of the consent decree.

3. Costco would achieve a "corporate-wide average leak rate" that is at or below:

   a. 22.3% percent for the first calendar year after the year of the Effective Date [the date of the consent decree];

   b. 20.7% percent for the second calendar year after the year of the Effective Date; and

3

    c. 19.1% percent for the third calendar year after the year of the Effective Date.

Failure to do so would result in stipulated penalties (set forth in the proposed consent decree) and further requirements to submit a proposed corrective action plan.

  4. Costco would install a glycol secondary loop refrigeration system for all medium-temperature covered appliances at all one-story warehouses and install centrally monitored refrigerant leak detection systems at new warehouses, for three years. These new systems would use "considerably less ozone-depleting refrigerant" and make it possible to detect and repair leaks more promptly (Riedel Decl. ¶¶ 4–5).

  5. Each party would bear their own costs of this action, including attorney's fees, except that the United States would be entitled to collect costs and fees incurred for collecting penalties due but not timely paid.

  This order finds that the proposed consent decree represents a reasonable factual and legal determination after negotiation involving the EPA. It reflects a reasonable compromise that takes into account the objectives of the Clean Air Act and the risks of litigation. Accordingly, this order finds that the proposed consent decree is substantively fair.

## CONCLUSION

For the reasons stated herein, the unopposed motion to enter the consent decree is **GRANTED**. The proposed consent decree is fundamentally fair, adequate, and reasonable. The November 20 hearing is hereby **VACATED**. The parties shall file a joint status report by **MARCH 2, 2018 AT NOON**. Unless good cause is shown, the consent decree terminates on **MARCH 30, 2018**.

**IT IS SO ORDERED.**

Dated: November 5, 2014.

               WILLIAM ALSUP
               UNITED STATES DISTRICT JUDGE

4